*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* APPLICATION OF CONSUMERS ENERGY
COMPANY FOR RECONCILIATION.

CONSUMERS ENERGY COMPANY,

        Petitioner-Appellant/Cross-Appellee,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee/Cross-Appellee,

and

CADILLAC RENEWABLE ENERGY, LLC,
GENESEE POWER STATION LIMITED
PARTNERSHIP, GRAYLING GENERATING
STATION LIMITED PARTNERSHIP, HILLMAN
POWER COMPANY, LLC, TES FILER CITY
STATION LIMITED PARTNERSHIP, NATIONAL
ENERGY OF LINCOLN, LLC, and NATIONAL
ENERGY OF MCBAIN, LLC,

        Appellees,

and

ASSOCIATION OF BUSINESSES ADVOCATING
FOR TARIFF EQUITY,

        Appellee/Cross-Appellant.

FOR PUBLICATION
February 1, 2024
9:10 a.m.

No. 362931
Public Service Commission
LC No. 00-020526

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

-1-

SWARTZLE, J.

In Michigan, an energy utility estimates its upcoming power-supply costs as part of its rate-setting process. Like any estimate, the utility's estimate can be off, sometimes way off. Anticipating the problem of how to reimburse a utility for increased power-supply costs, our Legislature enacted a reconciliation process, by which the utility can apply to the Public Service Commission (PSC) to increase upcoming rates to help recoup prior unanticipated costs.

Not all missed estimates are, however, created equal—some are due to acts outside of the utility's control, while others result from the utility's negligence or imprudent management. In a lightly regulated market, short sellers, hostile takeovers, proxy wars, and the like, serve as the discipline against poor estimates by management. In a highly regulated market like the one for energy in Michigan, however, that discipline must primarily come from elsewhere. Relevant here, our Legislature has conditioned a utility's recoupment of under-recovered costs on that utility having acted reasonably and prudently with respect to decisions impacting those costs.

In this appeal, Consumers Energy Company argues that the PSC erred in concluding that the utility did not act reasonably and prudently with respect to a prolonged outage. The record confirms, however, that Consumers provided "unreasonable or imprudent management" (or, put another way, failed to provide "reasonable and prudent management") with respect to the outage, causing the very increased costs of which it now complains. Seeing no reversible error, we affirm.

## I. BACKGROUND

To better understand this dispute, it is helpful to look briefly at how the energy market in Michigan deals with large-scale power outages. When an electricity-generating facility has an outage, or when the demand for electricity in a given area is unexpectedly high, the utility that services the affected area will provide replacement electricity to its affected customers. The replacement electricity often comes from electricity-generating facilities owned by other utilities, and this electricity is exchanged on a market for "wholesale electricity." Midcontinent Independent System Operator, Inc. (MISO) oversees the market for wholesale electricity in much of Michigan, and utilities can purchase and sell "zonal credits" through MISO's "planning resource auction." In essence, a "zonal credit" represents the right of the credit holder to a unit of deliverable "unforced capacity" that can be bought or sold on the MISO-managed market.

The cost of this replacement electricity is generally higher than the cost of the electricity generated by a utility's own facility. A utility can include the higher cost of replacement electricity in its cost-recovery plan so that consumers bear the ultimate burden of the higher cost, as opposed to the utility. If, at the end of the year, the utility faces an "underrecovery" of power-supply costs, then that utility can seek to "true up" the actual costs of power supply with its earlier, too-low estimate through the PSC's reconciliation process. The costs are passed along to consumers in the form of higher future rates.

In 2020, Consumers Energy had a planned outage for upgrades at Unit 3 of its Ludington Pumped Storage Plant. The upgrades and consequent outage had an original estimated completion date in Spring 2020, 140 days after it began. The outage was extended, however, to 366 days after material defects on a "discharge-ring extension" were found during installation. Consumers

Energy had selected Toshiba America Energy Systems Corporation as its contractor on the upgrade project, and Toshiba manufactured and installed the defective extension.

The original estimate for the Unit 3 outage was included in Consumers Energy's power-supply-cost plan for 2020. With the significantly longer outage, however, Consumers Energy had to purchase replacement electricity, and the utility claimed that this resulted in an under-recovery of power-supply costs. Consumers Energy accordingly sought reconciliation between its estimated and actual power-supply costs for the year.

The PSC's Administrative Law Judge Sally L. Wallace presided over the reconciliation proceedings. ALJ Wallace permitted several parties to intervene, including the Michigan Department of Attorney General and cross-appellant Association of Businesses Advocating Tariff Equity (ABATE). The department opposed Consumers Energy's application for reconciliation because, as it argued, the utility's increased power costs resulted from its unreasonable and imprudent management under MCL 460.6j. ABATE agreed with the department and further argued, in the alternative, that Consumers Energy generated revenue from the sales of its zonal credits through MISO, and that revenue should be included in the overall calculus as an offset against the higher cost of replacement power.

During an evidentiary hearing, a witness for Consumers Energy confirmed that the Unit 3 outage was longer than expected because material defects on the discharge-ring extension were discovered during installation. The witness explained that, to fix the problem, Toshiba ultimately had to design and manufacture a replacement. He acknowledged that contractor errors were responsible for most of the Unit 3 delays, though he cited the COVID-19 pandemic as an additional source of increased cost.

Another witness for Consumers Energy testified that the utility owned 51% of the Ludington Plant and DTE Energy owned the rest. The scheduled upgrade to the plant was a joint project between Consumers Energy, DTE, and Toshiba. Similar to the utility's other witness, this witness put the blame for increased costs on the contractor because it had designed, manufactured, and installed the materially defective discharge-ring extension. The witness further explained that it was a joint decision of both Consumers Energy and DTE that Toshiba should repair the defective extension. They moved away from this plan to repair only after several third-party experts concluded that any repair would itself be defective. Consumers Energy eventually instructed Toshiba to manufacture an entirely new discharge-ring extension.

For its part, ABATE provided written testimony from a consultant. The consultant noted that Consumers Energy's revenue from selling zonal credits was larger than its under-recovery of power-supply costs for 2020. The consultant argued that Consumers Energy would not have realized the increased revenue from sales of the zonal credits but-for the extended outage of Unit 3. Given this, the consultant concluded that the PSC should offset any purported under-recovery of Consumers Energy by that utility's revenues generated from the sale of its zonal credits.

The department's expert testified that Consumers Energy had incurred higher power-supply costs as a direct result of Toshiba's manufacture and installation errors, and the expert put the fault ultimately on mismanagement by the utility. As for ABATE's argument in the alternative, the expert disagreed that the increased revenue from the sale of zonal credits could be attributed

to the outage; instead, the spot-price of zonal credits depended on a myriad of factors, including capacity-import limits. To illustrate, the expert pointed to significant price fluctuations for the credits throughout Unit 3's extended outage.

ALJ Wallace subsequently issued a "proposal for decision" recommending that the PSC partially approve Consumers Energy's proposed reconciliation. Relevant to this appeal, the ALJ recommended that the PSC (a) reject the utility's proposal related to the Unit 3 outage extension, but also (b) allow the utility to keep certain damages it might collect from Toshiba related to the defective equipment. The ALJ specifically found that the outage was a result of Toshiba's errors in the manufacture and installation of the discharge-ring extension, and, in overseeing and managing its contractor, Consumers Energy did not meet the standard for recouping costs under MCL 460.6j(13)(c). As for ABATE's alternative argument, ALJ Wallace found that the revenues that Consumers Energy collected from the sale of zonal credits could not be attributed solely to the Unit 3 outage, and therefore those revenues could not offset the increased power-supply costs.

Consumers Energy filed exceptions with the PSC, and the utility argued that it had presented clear and satisfactory evidence that the outage was not caused by its own unreasonable, imprudent, or negligent actions. ABATE likewise filed exceptions with the PSC, consistent with its earlier position. Responses to the exceptions were also submitted.

The PSC subsequently issued its order approving Consumers Energy's application for reconciliation, but as modified by ALJ Wallace. In its ruling, the PSC considered whether cost recovery was warranted because (i) the higher costs were incurred as part of reasonable and prudent actions of the utility, or (ii) clear and convincing evidence demonstrated that the costs were beyond the utility's control, citing MCL 460.6j(15) as support for its analysis. The PSC concluded that "the replacement power costs were incurred as a result of the errors of [Toshiba] and that [Toshiba] was acting as an agent of Consumers [Energy] under the overall supervision of the utility." The PSC rejected ABATE's alternative argument for reasons similar to those set forth by the ALJ.

Consumers Energy now appeals, and ABATE cross-appeals.

## II. ANALYSIS

"A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record." *In re Application of Consumers Energy Co to Increase Rates*, 338 Mich App 239, 242; 979 NW2d 702 (2021) (cleaned up). An aggrieved party must "show by clear and satisfactory evidence that the order of the [PSC] complained of is unlawful or unreasonable." MCL 462.26(8). "To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a statutory requirement or abused its discretion in the exercise of its judgment." *In re Application of Consumers Energy Co to Increase Rates*, 338 Mich App at 242. This Court accords "due deference to the PSC's administrative expertise and is not to substitute its judgment for that of the PSC." *Id.* An order of the PSC "is unreasonable if it is not supported by the evidence," *In re Implementing Section 6w of 2016 PA 341 for Cloverland Electric Coop*, 329 Mich App 163, 175; 942 NW2d 38 (2019) (cleaned up), and the PSC's findings of fact are entitled to deference, *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 101; 754 NW2d 259 (2008).

"Issues of statutory interpretation are reviewed de novo." *In re Application of Consumers Energy Co to Increase Rates*, 338 Mich App at 243 (cleaned up). "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *In re Implementing Section 6w*, 329 Mich App at 177-178 (cleaned up).

## A. MCL 460.6j

Consumers Energy argues that it should be able to recover its power-supply costs because it reasonably and prudently managed all activities relating to the repair and upgrade of Unit 3. MCL 460.6j governs the recovery and reconciliation of power-supply costs, and MCL 460.6j(12) states in relevant part:

> Not less than once a year, and not later than 3 months after the end of the 12-month period covered by an electric utility's power supply cost recovery plan, the commission shall commence a proceeding, to be known as a power supply cost reconciliation, as a contested case pursuant to chapter 4 of the administrative procedures act of 1969, 1969 PA 306, MCL 24.271 to 24.287. The commission shall permit reasonable discovery before and during the reconciliation proceeding in order to assist parties and interested persons in obtaining evidence concerning reconciliation issues including, but not limited to, the reasonableness and prudence of expenditures and the amounts collected pursuant to the clause. At the power supply cost reconciliation the commission shall reconcile the revenues recorded pursuant to the power supply cost recovery factors and the allowance for cost of power supply included in the base rates established in the latest commission order for the utility with the amounts actually expensed and included in the cost of power supply by the utility. The commission shall consider any issue regarding the *reasonableness and prudence* of expenses for which customers were charged if the issue was not considered adequately at a previously conducted power supply and cost review. [Emphasis added.]

Further, MCL 460.6j(13) provides:
> In its order in a power supply cost reconciliation, the commission shall do all of the following:

> * * *

> (c) Disallow net increased costs attributable to a generating plant outage of more than 90 days in duration unless the utility demonstrates by clear and satisfactory evidence that the outage, or any part of the outage, was not caused or prolonged by the utility's negligence or by *unreasonable or imprudent* management. [Emphasis added.]

And MCL 460.6j(15) provides:

> In its order in a power supply cost reconciliation, the commission shall authorize an electric utility to recover from customers any net amount by which the amount determined to have been recovered over the period covered was less than the

amount determined to have been actually expensed by the utility for power supply, and to have been incurred through *reasonable and prudent actions* not precluded by the commission order in the power supply and cost review. For excess costs incurred through management actions contrary to the commission's power supply and cost review order, the commission shall authorize a utility to recover costs incurred for power supply in the reconciliation period in excess of the amount recovered over the period only if the utility demonstrates by clear and convincing evidence that the excess expenses were beyond the ability of the utility to control through reasonable and prudent actions. For excess costs incurred through management actions consistent with the commission's power supply and cost review order, the commission shall authorize a utility to recover costs incurred for power supply in the reconciliation period in excess of the amount recovered over the period only if the utility demonstrates that the level of those expenses resulted from *reasonable and prudent management* actions. . . . [Emphasis added.]

Consumers Energy first argues that the statutory schemes of MCL 460.6j(12), (13)(c), and (15) are not interchangeable or compatible because each references a different standard, and the PSC erred when it did not apply the correct legal standard under MCL 450.6j(13)(c).

As this Court has explained, "Statutes that relate to the same subject matter or share a common purpose are *in pari materia* and must be read together as one law to effectuate the legislative purpose as found in harmonious statutes. If two statutes lend themselves to a construction that avoids conflict, that construction should control." *In re Implementing Section 6w*, 329 Mich App at 178 (cleaned up).

When reading the statutes *in pari materia*, each provision quoted above states that the PSC shall determine whether the utility acted reasonably and prudently when considering the costs that the utility is seeking to recoup. There is no grammatical or logical dissonance between the operative standards set forth in the subsections—"reasonableness and prudence" (12); "unreasonable or imprudent management" (13(c)); and "reasonable and prudent management" (15)—regardless of whether they are framed in the affirmative sense (see (12) and (15)) or the negative sense (see 13(c)). Each centers on the *reasonableness* and *prudence* of acts made by the utility, whether in terms of generic "actions" or more specific "management actions."

In other words, MCL 460.6j as a whole makes clear that, for the utility to recover certain costs via reconciliation, the utility has the burden to show that its actions associated with the higher costs were reasonable and prudent. Thus, whether the PSC cited MCL 460.6j(15) instead of MCL 460.6j(13)(c), is a distinction without a difference in the context of this appeal. And, in any event, the PSC made clear that it was, in fact, applying the language from MCL 460.6j(13)(c), both (i) when it cited an earlier order that relied on that provision in resolving a similar dispute, and (ii) when it adopted the ALJ's recommendation, which cited MCL 406.6j(13)(c) as the basis for recommending the disallowance. The claim that the PSC applied the wrong standard is without merit.

Similarly, the claim that the PSC applied a strict-liability standard is without merit. The PSC performed a straightforward application of the statutory-reconciliation provisions to the facts at hand, and it disallowed recovery of certain costs because those costs were associated with

unreasonable and imprudent actions of a contractor under the direct and immediate supervision of Consumers Energy. This is consistent with the standard set in statute by our Legislature, not one developed in the common law by judges. As this Court has recently explained, cases like this do not present us with "a common-law tort action in which the other parties are seeking to hold Consumers Energy liable for negligence." *In re Application of Consumers Energy Co for Gas Cost Recovery*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356330). Moreover, there is nothing "strict liability" about the standard in MCL 460.6j; rather, there is a form of "fault" built into the statute, in the form of the utility having to act in a reasonable and prudent manner to qualify for recoupment of expenses.

To be clear, the PSC did not reject Consumers Energy's proposed reconciliation merely because the utility incurred higher expenses. Rather, the PSC concluded that Toshiba, as Consumers Energy's contractor, was the agent of the utility when it engaged in actions that caused a longer outage and higher costs, and the utility had responsibility for the supervision of its contractor. Moreover, in concluding that Consumers Energy did not satisfy its evidentiary burden under MCL 406.6j, the PSC had more than enough evidence in the record to show that the utility's delay and mismanagement of the problem contributed to the outage and associated costs.

The PSC's conclusions were supported by competent, material, and substantial evidence on the whole record. It is undisputed that the Unit 3 outage lasted for more than 90 days, and the testimony demonstrated that the outage arose primarily from errors committed by Toshiba as supervised by Consumers Energy. The PSC did not err in disallowing the recovery of replacement power costs associated with the extension of the Unit 3 outage.

## B. REVENUE FROM ZONAL CREDITS

With respect to ABATE's cross appeal, we need not reach the merits. During oral argument, the Court confirmed that the issues raised in the cross appeal would have practical effect only if the Court were to agree with Consumers Energy on its main appeal. Although ABATE raises interesting, substantive issues of statutory interpretation and pricing of zonal credits on the MISO market, even if this Court were to agree with ABATE, this would not alter the end result— i.e., Consumers Energy's requested reconciliation of costs associated with the Unit 3 extended outage was properly rejected by the PSC. Any analysis of the merits would be dicta, and, therefore, resolution of the issues raised by ABATE will have to wait another day.

## III. CONCLUSION

For these reasons, the PSC did not reversibly err when it modified Consumers Energy's reconciliation plan to disallow the costs associated with the extension of the outage to Unit 3.

Affirmed.

/s/ Brock A. Swartzle
/s/ Stephen L. Borrello
/s/ Sima G. Patel